**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RANDY H.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:25-cv-00599** |
| **v.** | : | |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

Plaintiff, Randy H., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors. (ECF No. 8.) For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors (ECF No. 8) and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff applied for DIB and SSI on October 3, 2022, alleging disability as of May 4, 2021, due to anxiety, PTSD, depression, cervical disc issues, carpel tunnel, and sciatica. (ECF No. 7-5 at PAGEID ##: 275–85; ECF No. 7-6 at PAGEID #: 306.) Plaintiff's applications were denied initially on January 17, 2023, and upon reconsideration on August 1, 2023. Thereafter, Plaintiff appeared with counsel before an administrative law judge ("ALJ") on January 31, 2024. (ECF No.

7-2 at PAGEID ##: 68–95.) On April 11, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID ##: 29–55.)

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026, and applied the five-step sequential process to evaluate his DIB and SSI applications.[1] (ECF No. 7-2, PAGEID #: 35.)

- Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 26, 2022, the potential onset date. (*Id.* at PAGEID #: 35.)
- Step Two: Plaintiff had the following severe impairments: major depressive disorder/bipolar disorder; attention-deficit hyperactivity disorder; post-traumatic stress disorder; generalized anxiety disorder; cannabis use disorder; degenerative disc disease of the lumbar spine; and degenerative disc disease of the cervical spine. (*Id.*)
- Step Three: The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or

   equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #: 36.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except he could perform simple tasks without a production rate pace; he could interact occasionally with coworkers or supervisors on matters limited to the straightforward exchange of information, without negotiation, persuasion or conflict resolution; he can perform work duties that do not require interaction with the public; and he can adapt to occasional changes.

(ECF No. 7-2, PAGEID # 38.)

- Step Four: The ALJ determined that Plaintiff was unable to perform his past relevant work as an auto mechanic, auto refrigeration mechanic, or as a press tender based on the VE testimony. (*Id.* at PAGEID ##: 47–48.)

- Step Five: The ALJ concluded that—when considering his age, education, work experience, and RFC, and in reliance on the Vocational Expert's testimony—there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a cleaner II, hand packager, or hospital cleaner. (*Id.* at PAGEID ##: 48-49.)

The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from neither February 26, 2022, through the date of the decision for the DIB claim, nor October 3, 2022, through the date of the decision for the SSI claim. (*Id.* at PAGEID #: 49.) The Appeals Council denied Plaintiff's request for review on April 1, 2025. (*Id.* at PAGEID ##: 23–28.) This appeal followed.

## II. RELEVANT RECORD EVIDENCE

The Court has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Court will refer and

cite to it as necessary in the discussion of the parties' arguments below.

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices

[Plaintiff] on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff contends that the ALJ failed to properly consider the medical source opinion evidence from the consultative physical examiner, Devin Francillon, D.O.; the consultative psychological examiner, Hugh Turner, Psy.D.; the treating nurses, Belinda Niece and Laura Cornelius; counselor Madeline Slack, L.P.C.C.; the state agency psychological consultants, David Dietz, Ph.D., and Vicki Warren, Ph.D.; and the state agency medical consultants, Abraham Mikalov, M.D., and Mehr Siddiqui, M.D., in violation of 20 C.F.R. §404.1520c. (ECF No. 8 at PAGEID ##: 833–46.)

The Commissioner counters that the ALJ provided a thorough and detailed analysis of the opinion evidence, and articulated the consistency and supportability factors in considering their persuasiveness. (ECF No. 9 at PAGEID ##: 851–68.)

### A. Applicable Regulations for Medical Opinion Evidence

A plaintiff's RFC "is defined as the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1). An ALJ's RFC determination must be "based on all of the relevant medical and other evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–

(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) Supportability; (2) Consistency; (3) Relationship with the Claimant; (4) Specialization; and (5) Other Factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ may discuss how they evaluated the other factors, they are not generally required to do so. *Id.* When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2).

Finally, "[a]lthough the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent

reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, No. 3:24-CV-00832-JJH, 2024 WL 5160189 (N.D. Ohio Dec. 19, 2024).

**B. Plaintiff's Physical Limitations**

For ease of reference the Court will first address the errors asserted by Plaintiff with respect to his alleged physical limitations.

**1. Consultative physical examiner, Devin Francillon, D.O.**

Plaintiff challenges the supportability of the ALJ's opinion with respect to her consideration of Devin Francillon, D.O.'s consultative examination opinion. Specifically, he contends that the ALJ mischaracterizes Dr. Francillon's opinion as a "mostly normal" examination when there were abnormalities found. (*See* ECF No. 8, at PAGEID #: 835–37.) He further contends that the ALJ erred when she opined that examination abnormalities, such as positive straight leg raising, some weakness in the left knee and ankle, and decreased sensation in the right leg, were not attributable to any medically determinable impairment because Dr. Francillon did attribute these findings to Plaintiff's history of cervical disc disease, carpal tunnel syndrome, and sciatica. (*Id.*)

Dr. Francillon examined Plaintiff on behalf of the state agency in December 2022. (ECF No. 7-7, PAGEID ##: 495–506.) He opined that: Plaintiff could sit for 45 minutes, stand for 45 minutes, walk for half a mile, and lift 20 pounds. (*Id.* at PAGEID #: 499.) Dr. Francillon also noted that Plaintiff does have physical limitations regarding decreased strength in the left knee and ankle. (*Id.*) Further, he opined that Plaintiff's medical conditions were not controlled on his current medication regimen. (*Id.*)

Upon review, the Court is not convinced by Plaintiff's arguments as to the ALJ's consideration of Dr. Francillon's opinion. As an initial matter, the ALJ's characterization of Dr. Francillon's findings as "mostly normal" is supported by a review of Dr. Francillon's notes, which reflect all normal findings for Plaintiff's range of motion measurements, and almost all 5/5 ratings for Plaintiff's muscle examination, except for a 4/5[2] rating for certain left knee and ankle muscle strength categories. (ECF No. 7-7, at PAGEID #: 496–506.)

Likewise, the ALJ did acknowledge that there was some objective support regarding physical impairments noted during Plaintiff's physical consultative examination with Dr. Francillon. The ALJ further explained that she considered and incorporated the objective findings with respect to his cervical and lumbar spinal regions, which revealed moderate degenerative disc disease, into the RFC. (ECF No. 7-2, at PAGEID #: 40.) The ALJ's rejection of more extreme limitations due to lack of "any explanation" was also appropriate based on the record evidence. The only mention of the limitations Plaintiff contends were erroneously rejected by the ALJ were self-reported and contained in the History of Present Illness section of Dr. Francillon's notes, which states that: "[p]atient is [sic] alleges limitations, secondary to above mentioned chief complaint, as sitting 20 minutes, standing 40 minutes, walking 1/4 mile, and lifting 20 pounds]" (ECF No. 7-7, at PAGEID #: 496.) But Dr. Francillon's notes and opinion do not explain why normal muscle strength findings and a slightly reduced range of motion findings in his left knee and ankle would require the more extreme limitations that Plaintiff alleges were erroneously omitted. Moreover,

[2] For context, on a scale of 0–5, a finding of 0 represents "[n]o movement," whereas a finding of 5 reflects that the "[m]uscle contracts against full resistance" and a 4 reflects "[s]trength reduced, but contraction can still move joint against resistance." (*Id.* at PAGEID #: 502.)

although Dr. Francillon noted decreased sensation in the right leg and increased in the left upper arm, Plaintiff otherwise had normal or 5/5 ratings for those limbs. (*See* at PAGEID #: 496–506.) Additionally, Plaintiff does not point to any other objective medical evidence to support more extreme limitations.

Accordingly, the ALJ's analysis of Dr. Francillon's opinion was supported by substantial evidence.

2. **Abraham Mikalov, M.D., and Mehr Siddiqui, M.D. - state agency medical consultants**

Plaintiff contends that the ALJ erred by rejecting state the opinions of agency reviewers Dr. Mikalov and Dr. Siddiqui—specifically, opinions that Plaintiff could perform work at the reduced range of light level of exertion. (ECF No. 7-3, PAGEID ##: 103–04, 127–28.)

The ALJ found their opinions were not persuasive, opining that they were neither consistent with nor supported by the totality of the record, which documented Plaintiff's ability to perform numerous activities of daily living, despite his pain complaints. The ALJ further rejected their opinions because she found that, in rendering their findings, the reviewing medical consultants relied on the limitations opined by Dr. Francillon. (ECF No. 7-2, PAGEID # 47.) Thus, because the Court finds that the ALJ's analysis of Dr. Francillon's opinion was supported by substantial evidence, the Court likewise finds that the ALJ's rejection of these state agency reviewers' opinions based on the same was supported by substantial evidence.

### C. Plaintiff's Mental Limitations

Plaintiff generally challenges the ALJ's consideration of the supportability and consistency factors as to each mental health professional. The Court will address the ALJ's consideration of each opinion, and the relevant factors, in turn.

#### 1. Consultative psychological examiner, Hugh Turner, Psy.D.[3]

Plaintiff also takes issue with the ALJ's consideration of Dr. Turner's opinion, contending that the ALJ: erred by disregarding Plaintiff's subjective reporting of symptoms because psychological impairments are not readily subject to objective testing; did not properly evaluate or explain her findings with respect to the consistency factor; and failed to properly evaluate the supportability of Dr. Turner's opinion because his opinion and notes did reflect social function deficits. (*See* ECF No. 8, at PAGEID #: 837–39.)

Dr. Turner evaluated Plaintiff on June 13, 2023. (ECF No. 7-7, PAGEID ##: 508–14.) Dr. Turner documented a normal appearance, cooperative attitude, no evidence of distraction, good eye contact, and normal ambulation. (*Id.*) However, Dr. Turner noted that Plaintiff did ask his wife "for many of the answers" and got up to walk into another room on several occasions to ask his wife questions he could not remember the answer for. He had normal speech, though the quality was somewhat pressured. Plaintiff exhibited a normal thought process but appeared "to be obsessed with the notion" that he suffered past abuse from his family. (*Id.* at PAGEID #: 511.) His affect was full and appropriate. (*Id.*) He was agitated and tense when speaking of past family members who he believed abused or mistreated him. (*Id.*) His sensorium was clear and

[3] Plaintiff refers to Dr. Turner as Dr. Taylor in his brief.

attention/concentration unremarkable. (*Id.* at PAGEID #: 512.) He could perform serial 7s without difficulty and could recall 3/3 items immediately and after a brief delay. (*Id.*) He appeared to have average cognition, good insight, and good judgment. (*Id.* at PAGEID #: 512.)

Dr. Turner diagnosed Plaintiff with Depressive Disorder, Unspecified ADHD, PTSD, and Generalized Anxiety Disorder. (*Id.* at PAGEID #: 513.) He opined that Plaintiff had no limits in solving problems and carrying out instructions "ordinarily," but if he does not take medications and continues to use marijuana, it could detract from his abilities. (*Id.*) Regarding concentration, attention, and pace, Dr. Turner noted no limits "ordinarily," and opined that Plaintiff's performance during the evaluation and past work history suggest that he could perform simple and multi-step tasks efficiently. (*Id.*) However, he does note that based on his accounts of past work issues, he "may experience acute anxiety" when asked to perform new duties. (*Id.*) Regarding social interaction, Dr. Turner opined that if Plaintiff is comfortable in the situation and environment, he should have no significant difficulty. (*Id.* at PAGEID #: 514.) Regarding work pressures, Dr. Turner assessed that due his reported history, Plaintiff would do better working with machines rather than people, as well as a "more solitary" shift instead of the "hustle and bustle of a regular work shift." (*Id.* at PAGEID ##: 513–14.)

In evaluating Dr. Turner 's opinion, the ALJ found his opinions "generally unpersuasive":

> [Dr. Turner] supports his opinions regarding deficits only with reference to [Plaintiff]'s subjectively reported symptoms and history, whereas the objective evidence appears to support his opinions of no limitations. However, as noted above, [Plaintiff]'s subjective reports are not generally consistent with the evidence (including the factors set forth in SSR 16-3p). Therefore, [Dr. Turner's] opinions premised on those subjective statements are likewise poorly supported and inconsistent with the record. Also, the opinions that suggest no limits in remembering are not well supported by the examination finding that [Plaintiff] had

> to ask his wife to answer many questions. I considered this in limiting [Plaintiff] to simple tasks, rather than finding no limits. The speculative parts of these opinions about what might happen if [Plaintiff] stopped taking medication and continued to use drugs were just that: speculative and not based on any acceptable evidence. The circular opinion that [Plaintiff] would do well socially if he was comfortable in the environment is meaningless. However, [Plaintiff] demonstrated no significant social deficits at this exam, as his expressive and receptive language skills were intact, and he was cooperative. While [Dr. Turner] did not share a meaningful opinion expressed in vocational terms, as I have noted, I find moderate limits and have adopted restrictions based on the collateral record, and [Dr. Turner]'s exam is not fully consistent with the collateral evidence (showing some anger, tearfulness, etc. at times, as noted above). While I agree that managing stress is a deficit, the opinion that this primarily affects him socially is not well supported with reference to the exam or otherwise, appears to be inconsistent with his other opinion related to the social domain, and is not consistent with the record, which does not support significant or consistent complaints of social anxiety but, rather, ongoing stressors related to his familial relationships. Be that as is may, the record does indicate that his therapeutic focus is on coping skills to respond to stressors, and I do find a moderate limit here. However, as also noted, I find it more appropriate to address this with the combined limits in the RFC which reduce the entire work profile to a range of lower stress work. For these reasons, [Dr. Turner's] opinions are neither fully supported nor are they fully consistent with the record and, therefore, they are not persuasive.

(ECF No. 7-2, at PAGEID #: 44.)

Upon review, the Court finds no error in the ALJ's analysis.

First, the ALJ adequately assessed the supportability of Dr. Turner's own report, by noting that many of his opinions were based on Plaintiff's own subjective reporting of symptoms. Plaintiff contends that this is problematic because psychological symptoms generally lack objective findings. (ECF No. 8, at PAGEID #: 837.) But the ALJ did not just reject Dr. Turner's opinion because he relied on Plaintiff's subjective symptoms. Instead, she explained that Plaintiff's subjective symptoms upon which the opinion was premised were "poorly supported and inconsistent with the record." (ECF No. 7-2, at PAGEID #: 44.) In making this determination, the

ALJ references her previous in-depth discussion of Plaintiff's subjective reports as being not consistent with the record, including his activities of daily living (such as babysitting, driving, shopping, and household chores), no documented emergent treatment during the relevant time period, demeanor during psychological follow-up visits, and that his stressors involve his relationships with immediate family. (*Id.* at PAGEID #: 41.) Likewise, the ALJ did not err in rejecting Dr. Turner's opined limitations based on speculative symptoms that could occur if he continued to smoke marijuana and/or discontinued his medications. *See Alisa B. v. Comm'r of Soc. Sec.*, No. 2:24-cv-3194, 2025 U.S. Dist. LEXIS 168990, at *16 (S.D. Ohio Aug. 29, 2025) ("An ALJ is not required to specifically discuss hypothetical or speculative comments of possible limitations that are based on the mere possibility that a medical condition might worsen on an unknown future date.").

Second, to the extent Plaintiff contends that the ALJ failed to sufficiently address the consistency factor when she referred to her prior discussion to support the conclusion that Dr. Turner's opinion was not consistent with the record as a whole, such argument is likewise without merit. The ALJ is not required to reiterate the same reasons and evidence each time. *Amy C. v. Comm'r of Soc. Sec.*, No. 3:25-cv-138, 2026 U.S. Dist. LEXIS 181180, at *13 (S.D. Ohio Aug. 13, 2026) ("[I]it is well established that an ALJ may rely on information articulated elsewhere in his [or her] decision to support a persuasiveness finding and need not rearticulate such information in [the] analysis." (citations omitted) (collecting cases)). In this case, the ALJ's reference to her prior discussion of Plaintiff's subjective reports was sufficient to create a logical bridge.

Third, Plaintiff's contention as to the supportability factor with respect to Dr. Turner's opinion on social functioning takes Dr. Turner's opinion out of context. Plaintiff contends that the ALJ erred by saying that Plaintiff did not demonstrate "social deficits" during the examination because Dr. Turner observed that "Plaintiff's speech pattern was 'somewhat pressured' and "that he became 'somewhat agitated and tense' or 'irritable' during portions of the clinical interview." (ECF No. 8, at PAGEID #: 838 (citing ECF No. 7-7, at PAGEID #: 511).)

But a review of Dr. Turner's notes in full reveals that Plaintiff's mood and tone changed only when talking about certain family members. (*See* ECF No. 7-7, at PAGEID #: 511 ("[A]ffect was generally full range and appropriate to speech and thought content" but that "[w]hen speaking about his mother, brother and dad he becomes somewhat agitated and tense . . . [and] his overall euthymic mood becomes irritable when talking about family matters.").) This makes sense when further reading Dr. Turner's opinion in context, as Plaintiff had previously indicated during that appointment that those particular family members abused him when he was a child. (*Id.* at PAGEID #: 509.)

And although Plaintiff contends that his limited ability to interact with his family supports a social deficient, Dr. Turner's notes clearly reflect that Plaintiff's mood and tone changed only when referencing those particular abusive family members, and that he otherwise reported a good relationship with his wife. (*Id.*) Moreover, Plaintiff's contention as to the ALJ's discussion of family-related stressors is beside the point given that the ALJ ultimately found Plaintiff to be *more* limited in social functioning than Dr. Turner. Specifically, the ALJ rejected Dr. Turner's opinion that plaintiff "would do well socially if he was comfortable in the environment" as meaningless

because it was circular and not vocationally relevant. Regardless, as the ALJ explained, she did find other evidence to support moderate restrictions in this category such as examples of anger, tearfulness, and a stressed response, and she accounted for those in the RFC. (ECF No. 7-2, at PAGEID #: 44.) The ALJ also rejected Dr. Turner's finding of no limitations with respect to memory—instead limiting him to simple tasks—after Dr. Turner's opinion noted that Plaintiff had to ask his wife answers for several questions and because other record evidence supported a greater limitation. (ECF No. 7-2, at PAGEID #: 44.) Finally, Plaintiff does not otherwise advance a different limitation that should have been included based on Dr. Turner's opinion on Plaintiff's social limitations. *See e.g. Ellis v. Comm'r of Soc. Sec.*, No. 3:20-cv-00469-SKL, 2021 U.S. Dist. LEXIS 261434, at *26 (E.D. Tenn. Dec. 14, 2021) (noting that it is the plaintiff's burden to identify specific limitations they believe should have been included) (citing *Jones v. Comm'r of Soc. Sec.*, 36 F.3d 469, 474 (6th Cir. 2003)).

Accordingly, the Court finds that the ALJ's discussion of Dr. Turner's opinion sufficiently discussed the relevant factors and was otherwise supported by substantial evidence.

**2. Treating nurses Belinda Niece, APRN, CNP, Laura Cornelius, LPN, and Counselor Madeleine Sloak, LPCC**

Plaintiff likewise alleges that the ALJ committed reversible error when she evaluated his treating nurses' and counselor's opinions. Plaintiff first contends that the ALJ erred when she summarized the interrogatory responses co-authored by two of Plaintiff's treating mental health nurses, but did not attribute Nurse Cornelius as one of the sources of that information. (ECF No. 8, at PAGEID #: 839.) Plaintiff further contends that the ALJ erred by failing to address the consistency and supportability factors of all three opinions.

With respect to Plaintiff's first argument, it is unclear whether the ALJ only considered the opinion to be Nurse Niece's or also Nurse Cornelius's as well. Although the ALJ begins the paragraph by discussing Nurse Niece's opinion[4] and using singular pronouns, a few sentences later the ALJ stated that she found "the nurse practitioners['] opinions are not persuasive, as said opinions are neither consistent with nor supported by the totality of the record." (ECF No. 7-2, at PAGEID #: 45.) Whether mere inartful drafting or actual oversight, it ultimately is immaterial to the outcome here. This is because there are not two separate opinions with distinct, separate conclusions. Rather, it appears that one mental impairment questionnaire was signed by both nurses. (*See* ECF No. 7-8, at PAGEID #: 574.) The regulation upon which Plaintiff relies, 20 C.F.R. § 404.1520c(c)(3), requires consideration of the medical opinion, and here, there was only one, co-authored medical opinion. Moreover, even if they were to be considered distinct, separate opinions, the ALJ is not required to address every evidentiary submission. *Holly R.T. v. Comm'r of Soc. Sec.*, No. 2:25-cv-691, 2026 U.S. Dist. LEXIS 71422, at *6 (S.D. Ohio Apr. 1, 2026) ("It is well established that an ALJ is not required to discuss every piece of evidence in the record to demonstrate that it was considered."). Thus, the Court does not find this constitutes sufficient grounds for reversal.

Likewise, the Court finds that the ALJ properly evaluated the consistency and supportability factors with respect to all these opinions.

[4] Because Nurse Niece both signed and printed her name, the Court will attribute this opinion primarily to her for ease of reference.

The mental impairment questionnaires at issue were check-box forms that listed Plaintiff's diagnoses as major depressive disorder, unspecified ADHD, PTSD, and generalized anxiety disorder. (ECF No. 7-8, PAGEID ##: 572–74; 575–77.)

The ALJ found Nurse Niece's opinion unpersuasive, noting that her opinions were neither consistent with nor supported by the totality of the record. (ECF No. 7-2, PAGEID #: 45.) She further evaluated Nurse Niece's opinion as follows:

> First, the review of the record reveals that the limitations are poorly supported both on the form itself and by reference to the nurse practitioner's own progress notes. The information provided in the form simply restates [Plaintiff]'s diagnoses and symptoms, then makes a variety of checked selections with no specific citation to evidence or explanation (e.g. time off task, absenteeism, marked limitations in any area). While this form was signed December 14, 2023, as noted above, a review of the record reveals that most of [the] nurse practitioner's own objective mental status examination findings are normal, including euthymic mood, and no cognitive impairment (See 11F & 12F). For instance, during [Plaintiff]'s visit in April 2023, the associated MSE findings were entirely normal (see 11F/59). Contrary to the severity of the functional limitations opined in the form that she completed, I note that she did not escalate [Plaintiff]'s care to inpatient or partial hospitalization outpatient care, as one would expect of a person with the degree of marked limitations that she indicated. Further, she also did not make ongoing or significant medication changes throughout the relevant period. Therefore, her limitations selected are inconsistent with the collateral record, including the relevant State Agency and psychological consultative examination findings and opinions, his mental status findings, and his conservative course of treatment. For these reasons, her opinions are not persuasive.

(*Id.*)

Similarly, the ALJ provided a well-reasoned analysis of Counselor Sloak's opinion and cited to the lack of explanation, internal inconsistencies in the opined limitations, and generally benign treatment notes, stating:

> This is the same form completed by Nurse Practitioner Niece (see 9F) and is unsupported for the same reasons, as various items are checked, without an

> explanation or citation to supporting evidence in the record, except for a list of diagnoses and symptoms. Moreover, many of her opined limitations are internally inconsistent. For example, she indicates that [Plaintiff] has only a moderate limitation in his ability to work at a consistent pace, but she then found a marked limitation in his ability to complete tasks in a timely matter; these findings are inconsistent because, if [Plaintiff]'s ability to work at a consistent pace is only moderately affected, he would be expected to complete tasks at a moderate pace. Additionally, she endorsed an extreme limitation in his ability to work without extra breaks, which appears to be inconsistent with both the moderate pace limits and marked task completion limitations noted on the form. Moreover, the limitations noted on the form are not fully consistent with her own progress notes. For instance, the record documents she initially saw [Plaintiff] in April 2023, and she noted that there were no notable mental status changes (see 11F/66) Further, the record notes that she saw him about every two weeks, and noted his ability to engage in many activities of daily living, including babysitting (see e.g. 11F/94). Additionally, she noted his subjective statements during various visits, which includes statements that he was doing "ok" and feeling good about some of his progress when last seen (see e.g. 11F/110). Moreover, she failed to document any specific objective mental status findings in her notes (see 11F/66-111). Overall, her responses entered on the form [are] also inconsistent with the findings of the State Agency reviewing consultants, the mental status findings indicated by Nurse Practitioner Niece, and the findings noted during the above-discussed consultative examination. For these reasons, her opinions are not persuasive.

(ECF No 7-2, PAGEID #: 45–46.)

Here, the ALJ's supportability analysis was quite thorough, and she provided sufficient reasons for rejecting Nurse Niece's and Counselor Sloak's opinions, including the lack of objective evidence in the treatment notes, internal inconsistencies between the extreme opined limitations, and many instances where Plaintiff had normal examination findings and no cognitive impairment. "By pointing out that the inconsistent results did not support severe limitations, the ALJ evaluated the opinion for supportability." *Michael P. v. Comm'r of Soc. Sec.*, No. 3:25-CV-00081, 2026 WL 395287, at *9 (S.D. Ohio Feb. 12, 2026), *report and recommendation adopted*, No. 3:25-CV-81, 2026 WL 564186 (S.D. Ohio Feb. 27, 2026) (citing *Peters v. O'Malley*, No. 6:24-CV-11-REW,

2024 WL 5077599, at *4–5 (E.D. Ky. Dec. 10, 2024) (explaining that the medical provider's "opinions suffer[ed] from internal inconsistencies," which was "a valid reason for finding the opinion unsupported," as "[t]hese internal contradictions between assessment and opinion plausibly go to the heart of supportability")). The fact that Plaintiff can point to examples within those records to support more extreme limitations does not alter this analysis. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

As to consistency, the ALJ noted the extreme limitations opined by Nurse Niece and Counselor Sloak and explained that the significant limitations they selected on the check-box forms were inconsistent with the other state agency reviewers' opinions, the other consultative examination findings, and Plaintiff's conservative course of treatment. Although less in-depth than the supportability factor, the Court finds that, in context, the ALJ's discussion was sufficient because it compared the detailed discussion of the nursers' opined limitations in contrast to the other previously analyzed opinion evidence finding less severe restrictions, and Plaintiff's overall treatment history during the relevant timeframe.[5] *See Ruth T. v. Comm'r of Soc. Sec.*, No. CV 2:25-CV-00723, 2026 WL 962109, at *7 (S.D. Ohio Apr. 9, 2026*)* (finding that despite its brevity, the

[5] Plaintiff cites to his involuntary psychiatric hospitalization in July of 2021 to contradict this point. However, the ALJ discussed Plaintiff's hospitalization, and considered his progress since that date, which was prior to the period under review. (ECF No. 7-2, at PAGEID #: 40.) She further contrasted that hospitalization and noted that "[d]uring the period under review, the record does not document any emergent treatment or hospitalization." (*Id.* at PAGEID #: 41.) Thus, the Court finds that the ALJ sufficiently considered Plaintiff's hospitalization, and that her analysis on this point was supported by substantial evidence in the record.

ALJ conducted a sufficient supportability and consistency analysis when it compared the medical opinion's limitations by reference to prior evidentiary discussions earlier in the opinion).

In sum, the Court finds that the ALJ appropriately addressed the required factors when analyzing the nurses' opinions, and that her decision was otherwise supported by substantial evidence.

**3. David Dietz, Ph.D., and Vicki Warren, Ph.D.: state agency psychological consultants**

Finally, Plaintiff contends that the ALJ erred in her assessment of the state agency reviewers when she misinterpreted their findings and rejected certain terms as not vocationally appropriate. (ECF No. 8, at PAGEID ##: 844–45.)

After reviewing Plaintiff's records in November 2022 and July 2023, respectfully, Dr. Dietz and Dr. Warren found Plaintiff had moderate limitations in the areas of sustained concentration and persistence, social interaction, and adaption. (ECF No. 7-3, PAGEID ##: 102, 125.) As to his functioning, they found that Plaintiff could perform work (of any complexity) without strict production demands or fast pace, with occasional and superficial interactions with others, and in a static environment, where duties are consistent and major changes are explained in advance. (*Id.* at PAGEID ##: 104–06, 128–30.)

The ALJ found their opinions "persuasive in part," including finding Plaintiff more limited in some areas than as opined by Drs. Dietz and Warren. (ECF No. 7-2, PAGEID #: 46.) She elaborated as follows:

> Like the [State Agency psychological consultants (whom the ALJ refers by the acronym "DDS")], I have adopted limits in pace, social interaction, and adapting to changes. While I did not adopt the DDS language verbatim as it is not appropriate

> RFC language, I have adopted consistent limitations based on moderate limitations, and find the DDS findings are generally supported, consistent and persuasive to that extent. However, I found [Plaintiff] more limited in the first Paragraph B domain and have reduced his profile to simple tasks. This is based on [Plaintiff]'s subjective complaints of difficulty with focus at times, with the rare objective mental status findings of impairment in attention, concentration and memory, and with [Plaintiff]'s noted difficulty with emotional regulation in response to family stressors, which supports in part a reduction in work stress, which I have addressed through limits in complexity as well as pace, the nature and extent of social interaction, and changes. Therefore, with respect to this domain, the DDS finding of no limits or mild limits is not persuasive; while it was supported by most of the objective mental status findings, it was not fully consistent with the record, including [Plaintiff]'s subjectively reported symptoms. The pace limit I adopted is broad enough to cover both fast pace and production demands and is therefore consistent with the DDS finding, which is adequately supported by reference to the record and generally consistent with the record at hearing. I also limited [Plaintiff] to occasional social interactions with coworkers and supervisors, given some rarely observed, yet still noted, anger, irritability and tearfulness when in counseling. However, instead of limiting him to "superficial" interactions, which is a non-vocational term, I limited him to simple tasks (which by definition restricts social interactions to simple communications) and further precluded more stressful interactions. I also precluded public interaction, also due to his reported difficulty managing his emotional responses to stressors, which is more limiting tha[n] the DDS findings. While the DDS findings were adequately supported, they were not fully consistent with the record at [the] hearing level which, as noted, indicates some reports or observations of anger, irritability and tearfulness at times. I did not adopt the DDS language about changes, as it is, first, internally inconsistent, as it suggests a "static environment" (no changes) but then also indicates that there can be "major changes" if explained in advance. Second, all changes must be explained insofar as they must be communicated to the employee and, therefore, this is not an appropriate RFC limitation. Third, [Plaintiff] has adapted to a variety of life changes including moving his household, many different clinical therapists (due to staff turnover), learning coping skills, and adjusting to changes in his relationship with his daughter and grandchildren. In addition, because I have limited him to simple tasks, any changes would also be limited to simple tasks which, by definition, require only a brief demonstration and up to 30 days to learn; given his normal cognition and history of skilled work, the DDS did not adequately support more restrictive limits in this domain and the DDS findings are also not consistent with the file. In sum, the DDS mental findings are persuasive in part.

(*Id.*)

Upon review, the Court finds that the ALJ's re-wording of the state agency reviewers' terms was appropriate.

"[In] deciding whether the ALJ has adequately 'explained' the decision not to adopt particular phrasing from a medical opinion, this Court's review is largely constrained to whether that explanation is rational such that the Court can 'trace the path of [its] reasoning.'" *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 741 (S.D. Ohio 2024) (citation omitted). An ALJ is "not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding." *Poe*, 342 F. App'x at 157. Nor is she required to "to include buzz words like 'superficial interactions.'" *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-055, 2023 WL 128288, at *7 (S.D. Ohio Jan. 9, 2023) (collecting cases). At the same time, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *Anissa H. v. Comm'r of Soc. Sec.*, 2023 WL 1857822, at *9 (S.D. Ohio Feb. 9, 2023) (rejecting the term "superficial," but limiting Plaintiff to "brief interactions with supervisors and coworkers sufficient to learn the simple, repetitive position and exchange appropriate work information without negotiation, persuasion, or conflict resolution"). Here, the ALJ explained why she was rejecting the term "superficial" and noted that she replaced it with simple tasks that precluded stressful interaction such as all public interactions. Although Plaintiff takes issue with the rejection of the term, he does not explain why the ALJ's converted limitations are not appropriate. Thus, the Court is not persuaded by this argument.

Likewise, the Court does not find that the ALJ's rejection of the term "static environment" was improper. As to this point, Plaintiff contends that the ALJ failed to read the static environment

limitation in context. The Court finds the ALJ's reasoning was sound on this point. To the extent Plaintiff is contending that he should have been limited to a static environment with no changes, the ALJ's explanations for her limitations were supported by the record. Moreover, the ALJ did otherwise account for this issue by limiting him to simple tasks. Finally, it is not otherwise clear from Plaintiff's arguments which restrictions the ALJ rejected that, so far as Plaintiff sees it, should have been included. Other than changing the terminology, the ALJ found Plaintiff to be moderately limited in the same categories. Thus, because Plaintiff cannot articulate how the ALJ's re-wording of the terms harmed him or omitted a necessary limitation, the Court finds no error with this analysis. *See e.g. Bennett v. Comm'r of Soc. Sec.*, No. 3:25-CV-02075-JRK, 2026 WL 1967218, at *11 (N.D. Ohio July 8, 2026), *report and recommendation adopted,* 2026 WL 2529391 (N.D. Ohio Aug. 27, 2026) (finding no error in an ALJ's re-wording of opined limitations when the plaintiff did "not identify evidence establishing that a more restrictive RFC was required to adequately account for her moderate limitations . . . [or] suggest what restrictions might have accounted for them").

## V. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 8) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**